**Dennis J. MIELE**

v.

**WILLIAM MORROW & COMPANY, INC., et al.**

**Civ. A. No. 85–4333.**

United States District Court, E.D. Pennsylvania

Jan. 6, 1987.

Francis X. Nolan, Himes, Sanders & Nolan, Philadelphia, Pa., for plaintiff.

Robert M. Callagy, Satterlee & Stephens, New York City, for defendants.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

This case is listed for trial commencing January 7, 1987. On December 17, 1986, the defendants filed a motion for summary judgment, to which plaintiff has now responded. Both sides have submitted extensive affidavits and evidentiary materials, but plaintiff nevertheless argues that the motion is "premature" (and, indeed, that it would be "premature" even to decide certain critical choice-of-law issues). It appears to be plaintiff's position that the defendants have improperly obstructed his discovery efforts, that he has recently obtained information suggesting the desirability of pursuing additional discovery, and that the imminent trial should, naturally, be postponed. If the suggested further discovery were relevant to the controlling issues on the summary judgment motion, I might well agree with plaintiff's counsel, notwithstanding the eleventh-hour nature of his application for continuance. The record of this litigation demonstrates that both sides have been playing close to the vest, and that defense counsel is probably more blameworthy than plaintiff's counsel.

This is a libel action. The defendants are the publisher and authors of a book entitled *Poisoning for Profit: The Mafia and Toxic Waste in America.* The overall

theme of this work is that huge amounts of toxic wastes are generated each year in this country (in excess of 150 million tons); that only about 10 percent will be legally and properly disposed of; that the illegal disposal of the balance will have disastrous long-term effects; and that organized crime is heavily involved in illegally disposing of toxic wastes, bribing public officials, etc., etc. The book recounts many scandals involving toxic-waste disposal in the State of New Jersey. One Richard Miele is named as a principal participant in scandalous activities both in New Jersey and elsewhere; apparently, Richard Miele has been and is being prosecuted for such activities in various courts. Although the portions of the book which have been submitted to me in connection with the pending motion shed no light on this precise issue, I gather that a fair reading of the book in its entirety would support a reasonable inference that Richard Miele has some involvement with organized crime, or at least is actively associated with reputed mobsters in connection with his business activities.

Plaintiff, Dennis Miele, is also engaged in the toxic waste disposal business, and has been for many years. The only direct reference to plaintiff in the book has to do with an alleged proposal by the operator of a dump in Georgia to set up a waste-disposal incinerator on a deserted Caribbean island, if a sufficient volume of waste materials could be obtained to justify the expense. According to the book, he initially negotiated with Richard Miele and one or more of his firms, but they thought his probable costs would be too high. But, according to the book, he remained confident that

> "he could strike another deal with Richard Miele's brother, Dennis, the operator of Applied Technology of Toms River, New Jersey."

The authors further state that plaintiff "reportedly disposed of the toxic waste for about 40 companies, and at the time was looking for a new facility to replace a South Carolina site that had recently been closed."

Plaintiff is not in fact the brother of Richard Miele, but all of the other statements about plaintiff are literally true: there were negotiations with the Georgia operator, plaintiff is the owner of Applied Technology in Toms River, New Jersey, and has indeed disposed of toxic wastes for more than 40 companies.

It would not have been illegal to dispose of toxic wastes at a Caribbean location not subject to United States law, and the book cannot reasonably be viewed as charging the plaintiff with any impropriety or illegality insofar as that particular proposal is concerned. Plaintiff argues, however, that the entire thrust of the book is to "expose" corruption and mob involvement in the entire toxic waste disposal industry; that the book casts an unwarranted shadow of impropriety on everyone involved in that industry; and that the false statement that plaintiff is the brother of the notorious Richard Miele renders the work defamatory. That is, although it would not ordinarily defame a person to be erroneously identified as the brother of a non-relative, when the latter is portrayed as a noted criminal and the two are involved in a business which is characterized as 90% illegal and permeated with corruption and mob influence, the innuendo is actionable.

I regard this as a very close question, but in ruling on a motion for summary judgment, close questions should be resolved against the movant. I therefore proceed on the assumption that plaintiff was defamed by defendants' publication. But the decisive questions have to do with whether plaintiff must prove actual malice in order to succeed in this action, and, if so, whether there is a genuine issue of fact as to the existence of actual malice.

This is a diversity case. I therefore apply Pennsylvania's choice-of-law principles. It is clear that, in this case, a Pennsylvania court would apply New Jersey law: plaintiff is a New Jersey citizen and resident; the harm occasioned by dissemination of the book occurred principally in New Jersey; and the business activities which were the subject of the alleged defamation occurred mostly in that State. At

the very least, it is clear that Pennsylvania has no particular interest in the matter. Arguably, perhaps, New York law might apply—the headquarters of the publisher, in which the editorial and promotional decisions were made—but New York law on the pertinent issues is essentially the same as that of New Jersey, so I need not pursue the matter.

■ It is also clear that, under the law of New Jersey, plaintiff is required to prove actual malice. This is not because plaintiff is a public figure—obviously, he is a private citizen, engaged in private pursuits—but because, under New Jersey law,

"... when a private person with sufficient experience, understanding and knowledge enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice." *Sisler v. Gannett Co.*, 104 N.J. 256, 516 A.2d 1083, (N.J.Supreme Ct.1986).

In *Sisler*, the defendant published a series of newspaper articles concerning alleged irregularities in a bank's lending policies. Plaintiff, a former officer of the bank, was falsely charged with having illegally approved certain loans; actually, the loans in question were entirely legal and proper. Recovery was nevertheless denied, because plaintiff could not prove actual malice. The court stated

"[Plaintiff was] undoubtedly thoroughly and intimately conversant with all of the public and governmental interests that attend the banking industry. Plaintiff would know, of course, that banks are regularly examined and audited. Moreover, the transaction itself was fraught with public implications ... Plaintiff, a sophisticated banker and business person, is also presumed to know that the possibility of special favors ... would invite close scrutiny and could attract media attention with the accompanying risk of inaccurate or false statements.

Thus, the press' investigation into such a matter is not wholly unexpected or aberrational, and indeed, is to be encouraged." *Id.*, 516 A.2d at 1093.

It cannot be disputed that the toxic waste disposal business is, in all of its ramifications, a matter of intense and legitimate public concern. Neither can it be disputed that plaintiff voluntarily engaged in that business with full awareness of the potential public interest therein. Under New Jersey law, therefore, he must show actual malice in order to recover for defamation on the basis of a publication dealing with that industry and that public interest.

■ Defendants' affidavits make very clear that the authors of the offending publication genuinely believed that plaintiff was the brother of Richard Miele. It is also clear, and apparently undisputed, that they made at least some effort to verify the accuracy of the statement. Plaintiff correctly argues that they relied upon secondary sources for this information, whereas a simple phone call to plaintiff would have shown the error. And counsel for plaintiff expects to be able to prove at trial that at least one of the purported "sources"—a staff member of a congressional committee, who allegedly confirmed the fraternal relationship by telephone—does not recall any such conversation. There is in the record, however, the report of a legislative investigation conducted in the State of New York, in which plaintiff is described as the brother of Richard Miele. On this record, it is manifest that plaintiff cannot establish actual knowledge of falsity, or reckless indifference. The defendants' motion for summary judgment will therefore be granted.

I do not accept what seems to be a principal component of plaintiff's argument in this regard, namely, that knowing falsehood or reckless indifference as to other aspects of the publication not concerning this plaintiff suffice to demonstrate actual malice with regard to the plaintiff. On the basis of the existing record, together with plaintiff's belated discovery and continuance motions, it appears that large portions

of the book dealing with certain congressional hearings and activities contain many inaccuracies and distortions; that corrections and retractions were requested in advance of publication; and that the defendants proceeded to publish, notwithstanding these alleged inaccuracies and distortions, in order to reduce costs and increase profits. In short, it is entirely possible that one or more other persons have been defamed by the book, and could succeed in proving actual malice. But this does not constitute evidence that any statements about this plaintiff were made with knowledge of their falsity or with reckless disregard. While not altogether irrelevant, this putative additional evidence cannot salvage plaintiff's case. No rational jury could find intentional falsehood or reckless disregard, insofar as this plaintiff is concerned.

For the foregoing reasons, defendants' motion for summary judgment will be granted.

## ORDER

AND NOW, this 6th day of January, 1987, it is ORDERED that defendants' motion for summary judgment is GRANTED. Judgment is entered in favor of the defendants.